UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LASHAWN W.,[1] | : | Case No. 3:20-cv-415 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# DECISION AND ENTRY

Plaintiff Lashawn W. brings this case before the Court challenging the Social Security Administration's denial of her application for Supplemental Security Income (SSI). This case is before the Court upon Plaintiff's Statement of Errors (Doc. #15), the Commissioner's Memorandum in Opposition (Doc. #18), Plaintiff's Reply (Doc. #19), and the administrative record (Doc. #12).

**I.  Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a).  The term "disability" encompasses "any

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case[2], Plaintiff applied for benefits on October 17, 2016, alleging disability due to heart problems and mental health illnesses. (Doc. #12, *PageID* #265). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Gregory G. Kenyon. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful employment since October 17, 2016, the application date. |
| Step 2: | | She has the severe impairments of congestive heart failure, obesity, right carpal tunnel syndrome, depression, posttraumatic stress disorder (PTSD), borderline intellectual functioning, and a borderline personality disorder. |
| Step 3: | | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work… subject to the following limitations: (1) occasionally crouching, crawling, kneeling, stooping, and climbing ramps and stairs; (2) never climbing ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) no exposure to strong magnetic fields; (6) frequently using the right upper extremity for handling and fingering; (7) performing unskilled, simple, repetitive tasks; |

---

[2] The Social Security Administration granted her first SSI application following an administrative decision on November 5, 2003, finding that she met listing 12.05C. (Doc. #12, *PageID* #s 94-97). Plaintiff continued to receive SSI until 2014 when she was incarcerated in state prison for drug possession. *Id.* at 138. After her release from prison in 2016, she filed a second SSI application.

      (8) occasional superficial contact with coworkers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or resolving conflicts); (9) no public contact; (10) no fast-paced production work or jobs which involve strict production quotas; and, (11) performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next."

      She has no past relevant work.

Step 5:  She can perform a significant number of jobs that exist in the national economy.

(Doc. #12, *PageID* #s 139-52). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 152. The Appeals Council granted Plaintiff's request for review and affirmed the ALJ's findings. *Id.* at 47-51.

  The evidence of record is adequately summarized in the ALJ's decision (Doc. #12, *PageID* #s 139-52), Plaintiff's Statement of Errors (Doc. #15), the Commissioner's Memorandum in Opposition (Doc. #18). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.**  **<u>Standard of Review</u>**

  Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.2007)). It is

"less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.   Discussion**

In her Statement of Errors, Plaintiff alleges that the ALJ, (and Appeals Council, which adopted the ALJ's findings and conclusions), committed reversible error in evaluating the medical source opinions of Drs. Nenonene and Oza. (Doc. #15, *PageID #s* 623-25). The Commissioner maintains that the ALJ's decision is supported by substantial evidence. (Doc. #18, *PageID #*s 640-46).  For the reasons that follow, Plaintiff's assignment of error is not well taken.

Social Security Regulations provide that an ALJ is required to consider every medical opinion in the record and weigh each according to factors like the nature of the relationship, supportability, consistency, and specialization. 20 C.F.R. § 416.927(c)(1)-(6). The Regulations recognize several different types of "acceptable" medical sources: treating physicians, non-treating, yet examining physicians, and non-treating, record-reviewing physicians." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see* 20 C.F.R.§ 416.902.   Generally, a treating doctor's opinion is entitled to more weight, and an ALJ must give good reasons for the

weight given a treating doctor's opinion. *See* 20 C.F.R. § 416.927(c)(2); *Gayheart*, 710 F.3d at 376. Indeed, when the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[,]" the ALJ is required to place controlling weight on the treating source's opinion.[3] *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

Nonetheless, an ALJ may discount a medical source's opinion, including a treating source's opinion, when the source fails to explain or provide objective medical evidence to support his or her opinion or if the source's opinion is inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). In addition, although medical source opinions about what an individual can still do or the individual's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the individual's RFC. *See* 20 C.F.R. §§ 416.927(d)(2), 416.945(a)(3), 416.946(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

In this case, Plaintiff challenges the ALJ's assessment of her treating primary care physician, Kwasi A. Nenonene, M.D., and the agency consultative examiner, Amita Oza, M.D. (Doc. #15, *PageID* #s 623-25). In October 2017, Dr. Nenonene completed an assessment form of Plaintiff's physical functioning and abilities. (Doc. #12, *PageID* #s 387-88). In the assessment, Dr. Nenonene indicated that Plaintiff had numerous medical conditions, including anxiety,

---

[3] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017)(to be codified at 20 C.F.R. pts. 404, 416). Since Plaintiff's application was filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to her claims.

depression, hypertension urticaria, heart failure, and hyperlipidemia, and that her health status was "[p]oor [b]ut [s]table." *Id*. at 387. With regard to Plaintiff's physical functional capacity, Dr. Nenonene indicated that Plaintiff could stand or walk for two hours at a time up to four hours in an eight-hour workday. *Id*. at 388. He likewise found that Plaintiff could sit for two hours at a time for up to four hours in an eight-hour workday. *Id*. According to Dr. Nenonene, Plaintiff was only moderately limited in her ability to perform repetitive foot movements but was markedly limited in her ability to push/pull, bend, reach, and handle. *Id*. He indicated that these limitations were based on the physical exams he performed during office visits and consultative reports. *Id.*

Contrary to Plaintiff's contentions, the ALJ reasonably determined that Dr. Nenonene's opinion was not entitled to controlling weight. In reviewing Dr. Nenonene's opinion, ALJ Kenyon acknowledged that he was an acceptable treating source but found that he could not give his opinion controlling or deferential weight as he "both understates and overstates the extent of her capabilities." (Doc. #12, *PageID* # 147). Here, ALJ Kenyon agreed with Dr. Nenonene's opinion that Plaintiff could not lift more than ten pounds as it was "consistent and supported by the evidence, including [Plaintiff's] own testimony[,] however, he found that Dr. Nenonene's other limitations were otherwise unsupported and inconsistent with the record. *See id*. at 147-48; *see also*, 20 C.F.R. § 416.927(c)(2) (providing that a treating source opinion will be given controlling weight if and only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record"). For example, ALJ reasonably rejected Dr. Nenonene's opinion that Plaintiff was unable to sit for more than four hours a day as there was no evidence of "any significant orthopedic

problem." *Id*. at 148. Additionally, ALJ Kenyon reasonably rejected Dr. Nenonene's opinion that Plaintiff could stand for up to four hours a day as an "overestimation" of Plaintiff's capability in light of her congestive heart failure diagnosis. *Id*.

Further, as noted elsewhere in his opinion, the ALJ found that treatment records as well as Dr. Oza's physical examinations showed mostly normal physical examinations, which, in turn, undermine Dr. Nenonene's findings that she was markedly limited in pushing, pulling, bending, reaching, and handling.  (Doc. #12, *PageID* #s 147-48, 408, 433, 459, 557-557).  Indeed, in formulating Plaintiff's RFC, ALJ Kenyon noted that the absence of evidence demonstrating that Plaintiff "lacks the capacity to perform the basic walking, standing, sitting, and lifting requirements of sedentary work as defined[,] but, nonetheless imposed additional nonexertional limitations to account for her cardiac impairment as well as her pacemaker and defibrillator. *Id*. at 149. This also lends credence to the ALJ's conclusion that Dr. Nenonene's opinion was unsupported and inconsistent with the record. *See Sprague v. Colvin*, 2015 WL 2066227, at *3 (S.D. Ohio) (Graham, D.J.) ("Where, as here, the ALJ thoroughly addressed such matters as the consultants' reports, the other medical evidence of record, and plaintiff's credibility earlier in his decision, the ALJ was not required to repeat his discussion of those matters again in his discussion of the weight to be assigned to the medical opinions.").

In short, the undersigned finds no error with the ALJ's consideration and assessment of Dr. Nenonene's opinion.  ALJ Kenyon properly declined to afford the opinion controlling weight and articulated good reasons for assigning the opinion only little weight.

Plaintiff also challenged the ALJ's assessment of the consultative examiner, Amita Oza, M.D.. (Doc. #15, *PageID* #s 623-25). On January 5, 2017, Dr. Oza evaluated the Plaintiff, who reported that she went into cardiac arrest in September 2015 after being sick for several months and was eventually provided with a pacemaker and defibrillator. (Doc. #12, *PageID* #s 367-72). Plaintiff also informed Dr. Oza that she lives with a cousin, who gives her all her medications and cooks for her. *Id*. at 367. Plaintiff indicated that her medications make her "feel[] extremely tired, dizzy, and week." *Id*. She also complained of dyspnea from climbing stairs or going to her room or the porch and occasional pedal edema. *Id*. Upon examination, Dr. Oza reported that Plaintiff had a "defibrillator, pacemaker in the left precordial region[]" and that she was in sinus rhythm. *Id*. at 368. Plaintiff was unable to touch her toes because of her size but otherwise exhibited musculoskeletal findings within normal limits. *Id*. Her extremities appeared "[w]ithout cyanosis, clubbing or edema." *Id*. After performing the examination, Dr. Oza provided the following statement:

> [Plaintiff] is 44 years old female patient, who from history had cardiac arrest in jail and subsequently had pacemaker and defibrillator. I do not know if she was in asystole or had ventricular arrhythmia, but she seems to be stable at this time. She is having side effects of her medications. I am not sure if she has cardiomyopathy or what her ejection fraction is, but at this time work-related activities are affected even at the sedentary level.

*Id*.

In reviewing Dr. Oza's report, ALJ Kenyon noted that her "conclusion does not seem to indicate [Plaintiff] is unable to perform all sedentary level work." (Doc. #12, *PageID* #49). Additionally, he noted that while Dr. Oza's opinion failed to provide "specific function-by-function limitations, Dr. Oza's conclusion—that [Plaintiff] can perform sedentary work with

limitations—is most consistent with the grossly normal physical exam findings[.]" *Id*. As a result, the ALJ afforded her opinion "partial weight." *Id*.

Contrary to Plaintiff's contentions, the ALJ's decision to attribute partial weight to Dr. Oza's opinion is supported by substantial evidence. Here, Plaintiff alleges that the ALJ "improperly substituted his lay interpretation of Dr. Oza's exam for that of Dr. Oza herself" by interpreting her opinion as stating that Plaintiff could perform sedentary work with limitations as opposed to not being able to perform sedentary work at all. (Doc. #15, *PageID* #623). This argument is without merit.

As noted above, Dr. Oza stated that Plaintiff's "work-related activities are affected even at the sedentary level." While she did not provide any specific limitations that Plaintiff would not be able to perform at the sedentary level, she also did not state that Plaintiff was unable to perform any form of sedentary work, even with limitations, as alleged by Plaintiff. Additionally, as noted by ALJ Kenyon, Dr. Oza's examination findings were otherwise normal. Thus, ALJ Kenyon reasonably interpreted this statement as meaning that Plaintiff could perform sedentary work with limitations. In turn, ALJ formulated an RFC that limited her to the sedentary exertional level with additional limitations. Accordingly, without further explanation regarding Plaintiff's specific level of functioning, ALJ Kenyon appropriately found that Dr. Oza's opinion was only entitled to partial weight. *See Quisenberry v. Comm'r of Soc. Sec.,* 757 F. App'x 422, 434 (6th Cir. 2018) (An ALJ may properly reject a vague opinion that does not provide any specific functional limitations).

At base, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016)

9

(Jolson, M.J.), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016) (Marbley, D.J.), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). However, the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")). For the reasons discussed above, Plaintiff has not shown that the ALJ erred when he reviewed the opinions of Drs. Nenonene or Oza. Accordingly, Plaintiff's assignment of error is without merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #15) is **DENIED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the Court's docket.

March 28, 2022

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge